**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Anthony SINES,
Defendant-Appellant.**

No. 84–1054.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1984.

Decided May 31, 1985.

Susan A. Ehrlich, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Jose de la Vara, Phoenix, Ariz., for defendant-appellant.

Before SCHROEDER, FLETCHER, and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

James Anthony Sines appeals from his conviction for conspiracy to import heroin, in violation of 21 U.S.C. §§ 952 and 963 (1982).[1] Sines challenges three pretrial rulings by the district court: (1) its ruling authorizing the government to take a videotaped deposition of Sines's unindicted co-conspirator, Christopher Steneman, who is currently incarcerated in Thailand; (2) its ruling admitting that deposition into evidence; and (3) its partial denial of Sines's motion under Fed.R.Crim.P. 41(e) for return of property that he claims was illegally seized from his residential trailer. We affirm.

## FACTUAL BACKGROUND

On February 4, 1983, Christopher Steneman was arrested in the Bangkok, Thailand airport as he attempted to leave the country with 1.2 kilograms of heroin in a false-bottom suitcase. Steneman subsequently pleaded guilty in a Thai court to a charge of sale and possession of heroin with intent to smuggle. He was sentenced to life imprisonment in Thailand, but his sentence was reduced to twenty-five years because of his guilty plea.[2]

After Steneman was arrested, he was interrogated by Thai and American drug enforcement officers, and he implicated two other men—James Sines and Rodney Rojas[3]—in a plot to smuggle heroin out of Thailand. According to Steneman, Sines offered him $10,000 and a truck if Steneman would travel to Thailand with Sines and return with a suitcase full of heroin; financed Steneman's trip to Thailand and planned his airplane routing; travelled on the same flight as Steneman from Los Angeles to Bangkok; rendezvoused with Steneman in Chiang Mai, a city 300 miles north of Bangkok; and introduced him to the individuals who supplied him with the heroin. Steneman agreed to testify against Sines and Rojas in exchange for the United

---

1. Section 952 was amended in October, 1984, Pub.L. No. 98–473, Title II, §§ 519–521, 98 Stat. 2075 (1984). For purposes of this appeal, however, we apply the former version of that provision.

2. At the time of Steneman's deposition in the present action, the Thai prosecutor was appealing his sentence and seeking to have it increased by twenty to twenty-five years. The record does not indicate the outcome of this appeal.

3. Rojas was indicted with Sines, but subsequently was dismissed as a defendant in this action.

States government's promise that it would attempt to have him transferred to an American prison,[4] and that it would not prosecute him for his drug offense when he returned to the United States.

Sines was arrested by United States Drug Enforcement Administration (DEA) agents on May 11, 1983. He was charged in a five-count indictment with conspiracy to import heroin, 21 U.S.C. §§ 952, 963, conspiracy to possess heroin with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846 (1982), two counts of interstate travel in aid of a racketeering enterprise, 18 U.S.C. § 1952(a)(3) (1982), and use of a communication facility to commit a felony, 21 U.S.C. § 843(b) (1982).

On June 23, 1983, the United States moved under Fed.R.Crim.P. 15 and 18 U.S.C. § 3503 (1982) to take a videotaped deposition of Steneman for use in its case against Sines, claiming that Steneman qualified as an unavailable witness because of his lengthy prison sentence in Thailand and because of the Thai government's unwillingness to permit him to be brought to the United States to testify. The district court granted the United States' motion over Sines's objection on July 13, 1983, but made its order provisional upon receipt of an affidavit from the government confirming that Steneman would be unavailable for Sines's trial. No such affidavit was ever filed. However, the issue of Steneman's unavailability was raised again in a hearing on August 18, 1983, and the district court accepted the prosecution's representation that the Thai government would not permit Steneman to leave Thailand to testify.

Steneman was deposed in prison in Bangkok on August 24, 1983. Sines's attorney attended and participated extensively, but Sines did not attend, apparently out of concern that he would be arrested by Thai authorities based upon Steneman's statements. The district court ultimately granted the government's motion for admission of Steneman's deposition into evidence on November 15, 1983, over Sines's objection.

On May 12, 1983—one day after Sines's arrest and one week before his indictment—government agents conducted a search of Sines's residence, a silver trailer located in Scottsdale, Arizona, and seized various documents and other property of Sines, including his passport. On December 12, 1983, Sines moved under Fed.R. Crim.P. 41(e) to require the United States to return the documents and property it had seized, claiming that there was no probable cause for his trailer to be searched, that the warrant authorizing the search constituted an impermissible general warrant, and that the agents executing the search warrant exceeded its scope and conducted a general exploratory search of the premises. The district court granted Sines's motion in part and denied it in part.

On December 13, 1983, Sines entered a conditional plea of nolo contendere under Fed.R.Crim.P. 11(a)(2) to the first count of his indictment: conspiracy to import heroin in violation of 21 U.S.C. §§ 952 and 963. Sines reserved the right to appeal, *inter alia*, the district court's rulings concerning the taking and admission of Steneman's videotaped deposition and concerning the issuance and execution of the search warrant for Sines's trailer. He now appeals on those grounds.

## ANALYSIS

Sines raises essentially five separate challenges to the district court's rulings. He claims that: (1) the taking of Steneman's deposition violated Fed.R.Crim.P. 15 and 18 U.S.C. § 3503, because the United States failed to demonstrate prior to the deposition that Steneman was "unavailable"; (2) the conduct of Steneman's deposition violated the procedural requirements imposed by Rule 15 and section 3503; (3) the district court's admission of Steneman's deposition into evidence violated Rule 15 and section 3503; (4) the taking

**4.** When Steneman spoke to United States officials about the possibility of a prisoner exchange, there was no treaty yet in effect between the United States and Thailand authorizing such prisoner exchanges.

and admission of Steneman's deposition violated his constitutional rights of confrontation and to effective assistance of counsel; and (5) the district court's failure to order the government to return Sines's passport after seizing it from his trailer violated his rights under the fourth amendment. None of these claims provides a basis for reversal.

## A. Requirements of Fed.R.Crim.P. 15 and 18 U.S.C. § 3503

The United States moved to depose Steneman in Thailand and later moved to admit his deposition into evidence under both Fed.R.Crim.P. 15 and 18 U.S.C. § 3503. These two provisions have an interconnected legislative history,[5] and as a result, they impose similar, although not identical, procedural requirements.

Both provisions authorize the taking of a deposition "[w]henever due to exceptional circumstances ... it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved." 18 U.S.C. § 3503(a); Fed.R. Crim.P. 15(a). Both require "[t]he party at whose instance [the] deposition is to be taken [to] give to every party reasonable written notice of [its] time and place." 18 U.S.C. 3503(b); Fed.R.Crim.P. 15(b). Both provide that "[a] defendant not in custody shall have the right to be present at the examination," and that "[w]henever a deposition is taken at the instance of the government ... the court may direct that the expenses of travel and subsistence of

the defendant and his attorney for attendance ... shall be paid by the government." 18 U.S.C. § 3503(b)–(c); Fed.R.Crim.P. 15(b)–(c). Finally, both provisions state that a defendant's "failure, absent good cause shown, to appear [at a deposition] after notice and tender of expenses ... shall constitute a waiver of [his] right [to be present] and of any objection to the taking and use of the deposition based upon that right." 18 U.S.C. § 3503(b); Fed.R.Crim.P. 15(b).

However, there are two significant differences between Rule 15 and section 3503. First, section 3503, unlike Rule 15, requires that the Attorney General or his designee must certify "that [the underlying] legal proceeding is against a person ... believed to have participated in an *organized criminal activity*" before any order for the taking of a deposition will be issued. 18 U.S.C. § 3503(a) (emphasis added). Second, the two provisions impose different requirements for the admission of a deposition into evidence once it has been taken. Rule 15 provides that:

> At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the *rules of evidence*, may be used as substantive evidence *if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence* ....

Fed.R.Crim.P. 15(e) (emphasis added). Federal Rule of Evidence 804(a) provides that a witness is "unavailable" for a given hearing, if he

<hr>

5. Prior to 1975, Rule 15 only authorized *defendants* to take depositions in criminal cases. In 1970, Congress enacted Title VI of the Organized Crime Control Act, which eventually became 18 U.S.C. § 3503, in an attempt to eliminate what it viewed as an omission in Rule 15. Section 3503 authorized the government to take depositions in cases in which the Attorney General or his designee certifies that the defendant "is believed to have participated in an organized criminal activity." 18 U.S.C. § 3503(a)(1982). It represented Congress' attempt to change Rule 15 in those cases where "the need for the deposing of Government witnesses appear[ed] to be most acute": those involving organized crime. H.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.

News 4007, 4025. Yet at the time, Congress did not want to exclude the possibility that someday the Judicial Conference of the United States might decide to amend the rules of criminal procedure in order to "adopt[ ] ... a broader approach." 116 Cong.Rec. 35293 (1970) (comments of Congressman Poff).

In 1974, Rule 15 was amended (effective December 1, 1975) to expand the government's authority to take depositions to *all* criminal actions. The language used in the revised rule is borrowed in part from § 3503, except that there is no requirement that the government certify the case as involving organized crime figures. *See* Advisory Committee Note to Rule 15, 1974 Amendment; *United States v. Tunnell,* 667 F.2d 1182, 1187 (5th Cir.1982).

... is absent from the hearing and the proponent of his statement has been *unable to procure his attendance ... by process or other reasonable means ....* [and] if his ... absence is [not] due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing [him] from attending or testifying.

Fed.R.Evid. 804(a) (emphasis added).

In contrast, section 3503 authorizes the admission of depositions into evidence in a broader set of situations:

At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: ... *that the witness is out of the United States,* unless it appears that the absence of the witness was procured by the party offering the deposition ... *or that the party offering the deposition has been unable to procure the attendance of the witness by subpena.*

18 U.S.C. § 3503(f) (emphasis added).

## B.   Challenges To Deposing Steneman

The district court authorized the taking of Steneman's deposition under both Fed.R. Crim.P. 15 and section 3503. Sines maintains that the United States failed to make an adequate showing under the terms of either provision that Steneman would be "unavailable" for trial prior to the granting of its motion to depose Steneman in Thailand. Sines contends that because the government failed to explore "all possible avenues to obtain Steneman for trial," the district court should never have authorized the taking of Steneman's deposition under Rule 15 or section 3503.

■ Sines's argument confuses the prerequisites for *taking* a deposition under Rule 15 and section 3503 with the prerequisites for *admitting* a deposition into evidence under those provisions. The two provisions do not require any conclusive showing of "unavailability" before a deposition can be taken in a criminal case. They only require that the trial court find that "due to exceptional circumstances ...

it is in the interest of justice that the testimony of a prospective witness ... be taken and preserved" for possible use at trial. 18 U.S.C. § 3503(a); Fed.R.Crim.P. 15(a). If the party taking the deposition seeks to introduce it as evidence at trial, he will have to demonstrate at that time that the deponent is unavailable. It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition. *See* H.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4026 ("The standards governing the taking of a deposition [under section 3503] are not the same as the standards for using such deposition at trial."); H.Rep. No. 247, 94th Cong., 1st Sess. (1974), U.S.Code Cong. & Admin.News 1975, 674 (under Rule 15, "[a] deposition, once it is taken, is not automatically admissible at trial .... It may only be used at trial if the witness is [then] unavailable....").

■ In the present case, it was clear by the time the United States moved to take Steneman's deposition that he would likely be incarcerated in Thailand for a significant number of years and would not be permitted to leave that country to testify against Sines. The district court confirmed this fact in its August 18, 1983 hearing, six days before Steneman's deposition occurred. Therefore, it was not an abuse of discretion for the district court to conclude that Steneman's situation amounted to "exceptional circumstances," and that it would be "in the interest of justice" for the government to be permitted to take his deposition so that it would be in a position to utilize his testimony at trial, if necessary. *See Furlow v. United States,* 644 F.2d 764, 767 (9th Cir.), *cert. denied,* 454 U.S. 871, 102 S.Ct. 340, 70 L.Ed.2d 175 (1981); *United States v. Richardson,* 588 F.2d 1235, 1241 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *United States v. Nichols,* 534 F.2d 202, 204 (9th Cir.1976).

Sines also contends that Steneman's deposition could not have been authorized under section 3503, because the United States failed to submit any certification to the district court that Sines was "believed to have participated in an organized criminal activity," as is required under section 3503(a). The United States responds that such certification can take many forms, and that it has satisfied the requirement through the specific charges that it included in Sines's indictment. *See United States v. Singleton*, 460 F.2d 1148, 1153 (2d Cir.1972), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973). We need not decide this issue in light of our ruling that the taking of Steneman's deposition was authorized under Rule 15. *See United States v. Tunnell*, 667 F.2d 1182, 1187 (5th Cir.1982).

### C. Challenges to the Conduct of Steneman's Deposition

■ Sines contends that the conduct of Steneman's deposition violated the requirements of Fed.R.Crim.P. 15 and section 3503 on a number of grounds. None of these challenges has any merit. Sines argues first that the government failed to provide written notice of the time and place of the deposition, as required under Rule 15(b) and section 3503(b). Although the record is unclear as to whether formal notice was provided, Sines's attorney was fully aware of the scheduling of Steneman's deposition, had his travel expenses for attending the deposition fully subsidized by the government, and actively participated throughout the course of the deposition. Therefore, regardless of whether Rule 15's and section 3503's written notice requirements were completely satisfied, no prejudice resulted to Sines.

■ Sines also contends that the United States and its agents did not cooperate with his counsel to arrange a meeting with Steneman prior to the deposition. Nothing in Rule 15 or section 3503 requires the government to assist the defendant and his counsel in such a manner. All that these provisions require is that the government

permit the defendant and his attorney to attend the deposition itself, and that the government subsidize the defendant's and defense counsel's transportation costs and expenses. *See* 18 U.S.C. § 3503; Fed.R. Crim.P. 15; *United States v. King*, 552 F.2d 833, 842 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). As this court stated in a case similar to the present one involving the depositions of two unindicted co-conspirators who were incarcerated in Japan for smuggling narcotics:

Appellants complain of an inability to interview the deponents prior to the examination, yet such an interview is not an absolute right....

*King*, 552 F.2d at 843.

■ Finally, Sines contends that under Rule 15 and section 3503, the government was required to obtain safe passage for him out of Thailand so that he could attend Steneman's deposition. There is no basis in either provision for this claim. *See* 18 U.S.C. § 3503; Fed.R.Crim.P. 15.

### D. Challenges To The Admission of Steneman's Deposition Into Evidence

■ Sines argues that the district court's admission of Steneman's deposition into evidence violated both Rule 15 and section 3503, because the government failed to make a sufficient showing that Steneman was "unavailable" to testify at trial. Sines contends that the government was required to exhaust all possible means at its disposal to secure the attendance of Steneman at trial. He notes that although a subpoena was prepared for Steneman, it was never actually served because of information the government allegedly received through "informal" channels. The United States maintains that it was notified by Thai officials that the subpoena would not be honored, and therefore determined that service of the subpoena would be "a meaningless gesture."

Under Rule 15, for Steneman's deposition to be admitted into evidence, the government was required to demonstrate that Steneman would be "absent" from Sines's

trial and that the United States, as "the proponent of his statement[,] ha[d] been *unable to procure his attendance ... by process or other reasonable means."* Fed.R.Crim.P. 15(e); Fed.R.Evid. 804(a)(5) (emphasis added). The prosecutor represented to the district court that after a series of contacts through various diplomatic channels, the Thai government had clearly indicated its unwillingness to permit Steneman to leave Thailand to testify. Although it would have been vastly preferable for the prosecution to submit affidavits precisely delineating the United States government's efforts to obtain Steneman's presence, we conclude that the district court did not abuse its discretion in concluding that the government's attempts in this regard were sufficient to establish Steneman's unavailability for purposes of Rule 15. *See United States v. Johnson,* 735 F.2d 1200, 1202–03 (9th Cir.1984) (ruling that "the prosecution [had] made all reasonable efforts to produce" its witness, the United States ambassador to Italy, when it called the ambassador and was told that "he was tied up in diplomatic matters of extreme sensitivity"); *Furlow v. United States,* 644 F.2d at 767; *United States v. Richardson,* 588 F.2d at 1241. Therefore, the district properly admitted Steneman's deposition into evidence in Sines's case.[6]

### E. Confrontation Clause and Right to Counsel Claims

Sines claims that the taking and admission of Steneman's deposition violated his rights under the confrontation clause of the sixth amendment, and his right to effective assistance of counsel, because he could not attend Steneman's deposition in Thailand. He claims that he was presented with a Hobson's choice: he could either forego attending the deposition, or attend and risk incarceration in Thailand. As a result, he claims that he was denied his chance to confront Steneman in person and to assist his attorney on cross-examination during the deposition.

■ These contentions are without merit. Sines was given the opportunity to attend Steneman's deposition, and chose not to attend. His decision, whether reasonable or not in light of the possibility that he might be arrested in Thailand on charges of narcotics trafficking, does not preclude the government from securing Steneman's testimony.

■ Sines's ineffective assistance claims are not supported by the record. His attorney attended Steneman's deposition, took an active part in objecting to a number of the government's questions, and skillfuly cross-examined Steneman himself. Moreover, Sines's attorney was given an opportunity to contact Sines by telephone during breaks in the deposition. As a result, there is simply no basis for Sines's ineffective assistance claim. *See Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ("The benchmark for judging any claim of ineffective [assistance of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a fair result.").

■ Sines's confrontation clause claim is similarly without merit. The Supreme Court has identified the major purposes of the confrontation clause as: (1) ensuring that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of witnesses. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970); *accord, Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972). All three of these purposes were fulfilled when Steneman's videotaped deposition was taken with Sines's attorney present. *See United States v. King,* 552 F.2d at 842 (focusing upon ability of defense counsel to investigate case, as opposed to defendants).

■ Sines also argues that Steneman's testimony lacks the "indicia of reliability"

---

6. In light of our ruling that Steneman's deposition was admissible under Rule 15, we need not decide whether it was also admissible under section 3503(f).

required by the confrontation clause, because Steneman was a confessed liar and was serving his own interests by testifying against Sines. However, courts are not expected to determine whether testimony bears sufficient "indicia of reliability" based upon their perceptions of the inherent reliability or unreliability of the deponent, but instead must make this determination based upon such guarantees of trustworthiness as the opportunity of the defendant's counsel to cross-examine, the administering of an oath to the deponent, and the jury's opportunity to observe his demeanor. *See Ohio v. Roberts*, 448 U.S. 56, 73, 100 S.Ct. 2531, 2542, 65 L.Ed.2d 597 (1980); *United States v. Johnson*, 735 F.2d at 1203 ("deposition bore sufficient indicia of reliability [s]ince [defendant's] counsel had an adequate opportunity to cross-examine [the deponent] and availed himself of that opportunity").

### F. Challenges Based Upon Sines's Rule 41(e) Motion

█ Finally, Sines challenges the district court's partial denial of his motion under Fed.R.Crim.P. 41(e) for return of illegally-seized evidence, based upon both the issuance and execution of the search warrant for his residential trailer. Sines claims that there was no probable cause to search his trailer, that the warrant issued was impermissibly "general" in its terms, and that the law enforcement personnel who executed the warrant exceeded its permissible scope.

Even if Sines's claims are valid, they do not require reversal of his conviction. At oral argument, Sines's counsel indicated that the only item seized from Sines's trailer that Sines seeks to suppress is his passport, which could be used to corroborate Steneman's testimony that he and Sines were in Thailand at the same time. However, Sines's passport was unnecessary to corroborate Steneman's testimony on this point, since the government also had hotel and airline records reflecting the dates

when Sines had been in Thailand, as well as the testimony of two Thai hotel managers.

Moreover, the government did not even use Sines's passport in obtaining his conviction. When Sines changed his plea to nolo contendere on December 13, 1983, the district court requested the government to summarize all "the evidence ... that [it] would present in this matter against the defendant." The government indicated that it would present the videotaped Steneman deposition, the hotel and airline records corroborating Steneman's testimony, the testimony of the two Thai hotel managers, the 1.2 kilograms of heroin seized from Steneman, and testimony by a chemist verifying that the substance seized from Steneman was heroin. The government did not even offer Sines's passport as evidence supporting his conviction, nor did the district court consider it in finding Sines guilty. Thus, Sines's passport was immaterial to his conviction, and as a result, even if the district court erred in partially denying Sines's Rule 41(e) motion, that error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Jennell*, 749 F.2d 1302, 1308 (9th Cir.1985).

AFFIRMED.