761 P.2d 163

**STATE of Arizona, Appellee,**

v.

**Cesar ALVARADO, Appellant.**

**No. 1 CA–CR 11591.**

Court of Appeals of Arizona,
Division 1, Department B.

July 26, 1988.

**90**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Roberson & Shelley by Jerrold F. Shelley, Yuma, for appellant.

## OPINION

**BROOKS, Presiding Judge.**

Defendant appeals following his convictions of: Count I, burglary in the first degree, a class 2 felony; Count II, attempted second degree murder involving the use of deadly weapon, a class 2 felony; Count III, aggravated assault, a class 3 felony; Count IV, aggravated assault, a class 3 felony; and Count VI, theft of property with value over $1,000, a class 3 felony. He was sentenced to aggravated terms of 12 years imprisonment on Count I, 15 years on Counts II, III, and IV, and a presumptive term of five years on Count VI. The sentences imposed on Counts I, II, and III were ordered to be served consecutively while the sentences imposed on Counts IV and VI were ordered to be served concurrent with the sentence imposed on Count III.

The charges in this case arose out of the brutal stabbing of a 62–year–old woman in her home. A co-defendant, Gabriel Matus, was convicted in a separate trial and his conviction was affirmed on appeal. *See State v. Matus*, 1 CA–CR 11260 (Memo. Dec., March 1, 1988).

The victim testified that she was awakened late at night when two men entered her bedroom. One of the men sat on her head while the other man stabbed her repeatedly in the back. One of the men asked her where she kept her money and then both men left the bedroom in search of it. Either one or both of the men returned a short time later and resumed stabbing the victim in the back. She then lost consciousness for a period of time. Upon regaining consciousness, the stabbings continued. At the end of the assault, one of the men slowly punctured the victim's neck with a sharp instrument. The men took the victim's car, a microwave oven, and a

cordless telephone. The victim testified that although she did not clearly see either of the attackers, she thought they had Hispanic accents.

On appeal, defendant argues:

1. The trial court erred when it permitted the introduction of defendant's confession;

2. The trial court erred in precluding defense counsel from having fingerprints from the victim's maid and family taken and compared to usable prints found at the scene of the crime;

3. The trial court erred when it permitted the deposition testimony of a witness to be introduced at trial; and

4. The trial court erred by making the sentences on the aggravated assault charges consecutive.

## VOLUNTARINESS OF DEFENDANT'S STATEMENT

■ Defendant first argues that the statement that he gave to Detective Brian Rogers on January 7, 1987, was involuntary because it was obtained by a promise. He contends that he had been promised that if he turned himself in and gave a statement, his brother, Raul, who had been previously arrested, would be released. He argues that this promise induced his statement. He also contends that he was told what to write in his statement by Detective Rogers.

A trial judge's determination of the voluntariness of a defendant's confession will not be reversed on appeal absent clear and manifest error. *State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987). The trial court looks to the totality of the circumstances in evaluating the voluntariness of a statement. *State v. Griffin*, 148 Ariz. 82, 85, 713 P.2d 283, 286 (1986).

The evidence in this case regarding the existence of a promise was conflicting. The attorney who represented the co-defendant, Matus, testified that he was told by the prosecutor that no promises of any kind had been made to the defendant in order to obtain a confession. He further

testified that he had the impression that the defendant's mother had talked her son into turning himself in because it was "the right thing to do" and not because of any promises or threats.

The prosecutor testified that his decision to dismiss charges against defendant's brother was not the result of any deal or promise. He also testified that it was the defendant's mother who contacted the prosecutor's office to obtain an appointment to talk about the case against her sons. Defendant's mother initiated contact with the prosecutor's office to advise the prosecutor that Raul had been home in bed on the night of the stabbing incident and that she had been up waiting for defendant to return home. He further testified that defendant's mother wanted him to understand that Raul could not have been involved in the incident. He further testified that he had never promised to dismiss the case against Raul if defendant would give a statement to the police.

Detective Armando Marquez also testified that no promises had been made by him to defendant's mother or to the defendant. Marquez was the Spanish-speaking officer who assisted Detective Rogers at the interview of the defendant shortly after he turned himself in on January 7, 1987. Marquez testified that he read defendant the *Miranda* rights in Spanish. He further testified that defendant read the *Miranda* card aloud. He also testified that after defendant read the card, he asked him if he understood what he had read and defendant stated that he did. Detective Marquez then took the card from defendant and read each sentence to him and explained it to him. Defendant never stated that he would not talk to the officers. Thereafter, Marquez interviewed defendant for approximately one-half hour to an hour. He concluded the interview by asking defendant if he would furnish a written statement, and defendant agreed to do so.

Detective Rogers also testified that no promises were made to defendant's mother regarding either of her sons. He stated that defendant had already told Marquez about the stabbings before he was asked to complete a written statement. After defendant finished writing a statement in Spanish, which apparently took him some time to complete, Rogers asked a Spanish-speaking clerk to interpret it for him. When he discovered that defendant had not written anything about the actual stabbing of the victim, he returned to ask defendant to add that to the statement, which defendant did. Rogers testified that it was common practice to go over a defendant's statement with him and to request that any gaps be filled in.

Defendant's mother's testimony was conflicting as to the nature or type of promise that had been made to her which caused her to report defendant to the police. She testified at one point that Detective Rogers told her that if her son would "declare [him]self guilty," his brother, Raul, would be released. During cross-examination, she admitted that she didn't know if there were really any clear promises made, but she understood that Raul would be released if defendant voluntarily appeared and talked to the police about the incident. She also testified that her entire family was blaming the defendant for Raul being in jail.

Defendant also testified at the motion to suppress hearing and stated that Marquez told him that if he would "plead guilty" his brother would go free. He testified that Marquez did not explain his rights to him, that he had just given him the *Miranda* card to read and that he did not understand or read very well.

The circumstances surrounding the surrender of defendant to the police tended to corroborate the voluntariness of his statements. It was apparent that defendant's family was convinced of the innocence of Raul because defendant's mother claimed that Raul was asleep at her residence on the night of the incident. Furthermore, the mother had seen defendant return in the company of the co-defendant, Gabriel Matus, with the victim's white and red vehicle. She appears to have been intent on having defendant surrender in order to allow her other son to be released. Those circumstances were consistent with the testimony

by all of the state's witnesses that no promises of any kind were made to defendant to cause his surrender or his confession. It is for the trial court to resolve conflicting testimony and to weigh the credibility of witnesses. *State v. Cannon*, 148 Ariz. 72, 75, 713 P.2d 273, 276 (1985). Under the facts of this case, we cannot say that the trial court abused its discretion in admitting defendant's statement.

## REFUSAL TO FINGERPRINT THE FAMILY OF THE VICTIM

Defendant next argues that the trial court erred when it denied a pretrial motion for the fingerprinting of the victim's maid and family members. Defendant argued that he needed the fingerprints in order to compare them to those found on liquor bottles and cups that were moved at the time the microwave oven was apparently taken from the victim's home. During the argument on the motion to compel the fingerprinting, defense counsel argued that it was his defense that defendant did not move the items and that the fingerprints belonged to the person who had actually committed the crime. A usable, partial palmprint was found at the scene and it was identified as belonging to the co-defendant, Matus. All other usable prints discovered at the scene were never identified as belonging to defendant or Matus.

Defendant argues that had the maid and two children been excluded from the persons who might have left the prints, he could have argued that another person aided Matus in the commission of the offenses. He concludes that he was prevented from arguing a reasonable inference from the evidence.

It is unclear how defendant was prevented from arguing his theory to the jury by the refusal of the court to require the fingerprinting of the maid and the victim's children. Because the prints were not identified as belonging to Matus or defendant, the defendant was able to argue that the prints belonged to someone else. Proving that the fingerprints did not belong to the maid or two of the victim's children would have added little to the defendant's case.

The admission of evidence is largely within the discretion of the trial court and its evidentiary rulings will not be disturbed on appeal absent an abuse of discretion. *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973). We find no abuse of discretion.

## ADMISSION OF THE DEPOSITION TESTIMONY

Prior to trial, defendant sought a court order permitting him to interview a state's witness in Mexico. The evidence available to the defense through police reports indicated that one Jose Ortiz would testify that defendant contacted him approximately two days after the burglary and theft of the victim's vehicle. Ortiz had stated that he and defendant were arranging the sale of the victim's car in Mexico. Although the trial court stated that it would permit the deposition, it would not allow defendant, who was incarcerated, to be present at the deposition. Later, defense counsel declined to depose the witness but the state insisted upon taking the witness' deposition to prepare for trial. Prior to the taking of the deposition, defense counsel objected, stating that he would be unable to proceed in defendant's absence because he was unable to effectively cross-examine the witness without consulting with his client during the deposition.

On appeal, defendant argues that the admission of Ortiz' deposition at trial violated his Sixth Amendment right to confrontation. He also argues that the deposition was inadmissible under Rule 19.3(c), Arizona Rules of Criminal Procedure, because no evidence was presented that Ortiz was unavailable as a witness at trial.

Rule 19.3(c) permits a deposition taken pursuant to Rule 15.3 to be admitted into evidence if (1) there is sufficient identity of interest between the parties who had the right and opportunity to cross-examine the declarant with an interest and motive similar to that in the proceeding at which the deposition is offered; and (2) the declarant is unavailable as a witness. Rule 15.3(a) provides for the taking of a deposition in three instances:

(1) A party shows that the person's testimony is material to the case and that there is a substantial likelihood that he will not be available at the time of trial;

(2) A party shows that the person's testimony is material to the case or necessary adequately to prepare a defense or investigate the offense, that he was not a witness at the preliminary hearing, and that he will not cooperate in granting a personal interview; or,

(3) A witness shows that he is incarcerated for failure to give satisfactory security that he will appear to testify at a trial or hearing.

■ A defendant has the right to be present at any examination conducted under paragraph (1) or (3). *See* Rule 15.3(d). The sole purpose for taking Ortiz' testimony in Mexico was because he had refused to enter the United States in order to testify at trial. The state clearly intended to attempt to preserve Ortiz' testimony for trial because there was a substantial likelihood that he would not be available at the time of trial. However, a condition precedent to admissibility under Rule 19.3 is that the deposition be taken in accordance with Rule 15.3. Interpreting a rule similar to ours, the court in *Wilson v. State*, 479 So.2d 273 (Fla.App.1985) held that the use of a deposition at trial against a defendant, taken in his involuntary absence while he was incarcerated, violated his right to be personally present even though his attorney was present. *See also State v. Basiliere*, 353 So.2d 820 (Fla.1978) (even though defense counsel conducted deposition of victim/witness, in absence of defendant who was in custody, the deposition was inadmissible at trial because the defendant had not waived his presence); *State v. Turner*, 345 N.W.2d 552, 559 (Iowa App. 1983) (a deposition taken for introduction at trial is a stage of the proceeding that a defendant has a right to attend, and he must knowingly, voluntarily and intelligently waive his presence); *People v. Nastasio*, 19 Ill.2d 524, 168 N.E.2d 728 (1960) (where the defendant was incarcerated and did not voluntarily waive his presence at a deposition, it could not be used against him as substantive evidence at trial); *United States v. Provencio*, 554 F.2d 361 (9th Cir. 1977).

In the instant case, the state failed to show that defendant waived his right to be present at the taking of the deposition under Rule 15.3(a)(1). As noted in *United States v. Benfield*, 593 F.2d 815 (8th Cir. 1979):

While some recent cases use other language, none denies that confrontation required a face-to-face meeting in 1791 and none lessens the force of the sixth amendment. Of course, confrontation requires cross-examination in addition to a face-to-face meeting. The right of cross-examination reinforces the importance of physical confrontation. Most believe that in some undefined but real way recollection, veracity, and communication are influenced by face-to-face challenge. This feature is a part of the sixth amendment right additional to the right of cold, logical cross-examination by one's counsel. While a deposition necessarily eliminates a face-to-face meeting between witness and jury, we find no justification for further abridgement of the defendant's rights.

. . . .

Basically the confrontation clause contemplates the active participation of the accused at all stages of the trial, including the face-to-face meeting with the witness at trial or, at the minimum, in a deposition allowing the accused to face the witness, assist his counsel, and participate in the questioning through his counsel.

*Benfield* at 821 (citations and footnotes omitted). *Benfield* also recognized that the exclusion of a defendant from a deposition where a witness' testimony is taken with the intent of later introducing it at trial potentially conflicts with a defendant's right to self-representation. *Id.* at 821, n. 8.

We find that the trial court erred in permitting the state to introduce the deposition testimony of the witness Ortiz without a waiver of the defendant's presence at his deposition. However, violations of the confrontation clause are subject to harmless error analysis. *See Coy v. Iowa*, ——

U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Such harmlessness must be determined on the basis of the remaining evidence. *Id.*

■ The state presented testimony from the defendant's mother who saw him in the company of the co-defendant, Matus, in the early morning hours after the offense occurred. She admitted to seeing the two men in possession of a vehicle the same color as the victim's. Defendant's brother, Raul, gave a statement to the police also indicating that defendant was in possession of a car similar to the victim's shortly after the offense occurred. Raul also told the police that his brother had admitted stabbing the victim. Later, after defendant turned himself in, he gave a statement implicating himself in both the stabbing and the theft of the victim's property. In addition, a partial palmprint belonging to Matus was lifted from one of the pieces of glass from a door broken into by the victim's attackers. We conclude that the evidence in this case was overwhelming and that it is clear that the jury would have returned a verdict against defendant even had the Ortiz deposition not been presented. *State v. Ashelman,* 137 Ariz. 460, 466, 671 P.2d 901, 907 (1983). Defendant is therefore not entitled to a reversal of his conviction.

### CONSECUTIVE SENTENCES

■ Defendant was sentenced to concurrent terms of imprisonment on the aggravated assault convictions. These sentences were ordered to run consecutive to the sentences imposed for theft and attempted second-degree murder with a dangerous weapon. Defendant argues that it was improper to sentence him to consecutive terms for these offenses because the evidence showed that this was merely one offense. He argues that because the conviction for second-degree murder involved the same knife thrusts as those supporting the assault convictions, those crimes may not be punished consecutively because they were "part and parcel of the same act." He concludes that, in any event, the consecutive sentences were an abuse of discretion in view of defendant's age and lack of any prior criminal history.

Defendant was sentenced to a total of 42 years imprisonment for the offenses committed against the victim in this case. The victim's testimony supported the conclusion that there were three separate attacks committed against her occurring at different times with stab wounds to her back and, finally, one to her neck.

The courts in Arizona use the "identical elements" test to determine if the double punishment proscription of A.R.S. § 13–116 has been violated. *State v. Tinghitella,* 108 Ariz. 1, 4, 491 P.2d 834, 837 (1971); *State v. Woods,* 141 Ariz. 446, 687 P.2d 1201 (1984). Under that test, the court eliminates evidence necessary to support one offense and then determines whether the remaining evidence is sufficient to establish the elements of the other charge. *Id.* If the remaining facts support the additional offense, there is no double punishment and consecutive sentences are permissible. *Id.; see also State v. Henley,* 141 Ariz. 465, 687 P.2d 1220 (1984).

The evidence in this case showed that the victim was attacked on separate occasions. On two of those occasions, she received multiple knife wounds to her back. Finally, when the attacks appeared to have ended, she was stabbed with a sharp object which was slowly and deliberately pushed into her neck. When the evidence supporting the attempted second-degree murder charge is removed from consideration, there was still sufficient evidence remaining to support each of the aggravated assault charges. Based on the evidence presented at trial, the jury could have found that defendant committed attempted murder in addition to the aggravated assaults. We therefore find no abuse of discretion in the trial court's imposition of consecutive sentences.

For the foregoing reasons, the judgment and sentences are affirmed.

KLEINSCHMIDT and EUBANK, JJ., concur.