**Stephen CHRISTIAN, a/k/a Stephen Cline, Petitioner–Appellant,**

**v.**

**William RHODE, et al., Respondents–Appellees.**

**No. 93–16805.**

United States Court of Appeals,
Ninth Circuit.

Submitted * Oct. 5, 1994.

Decided Nov. 22, 1994.

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Steve C. Cline, Goodyear, AZ, in pro. per.

**464**

R. Wayne Ford, Asst. Atty. Gen., Phoenix, AZ, for the respondents-appellees.

Before: SNEED, PREGERSON, and WIGGINS, Circuit Judges.

SNEED, Circuit Judge:

The cry, "There's gold in them thar hills!" has long lured investors, dreamers, and sometimes deceivers. So it did in this case. Arizona investors laid out over $1.8 million to obtain interests in mining operations, only to discover that there was neither gold nor any hills. The mines were nonexistent, the shares worthless, and the mine promoter, Stephen Christian,[1] and his cohorts had spent the invested funds on personal effects.

Christian was convicted on multiple counts of criminal fraud, conspiracy, and theft by an Arizona jury. After exhausting state remedies, Christian petitioned *pro se* for a writ of habeas corpus. The district court denied the petition. Christian appeals, arguing that (1) the state's use of videotaped depositions violated his Sixth Amendment right to confront witnesses, (2) his appointed counsel was ineffective for failing to object to the deposition procedure, (3) the district court improperly enhanced his sentence, and (4) the district court improperly denied his discovery motion. We affirm the district court's denial of the writ.

**I.**

Christian created several purported mining companies and NQUIR Financials Ltd. (NQUIR), a Cayman Islands corporation appearing to be a financial institution. From late 1980 through 1982, Christian and two associates sold interests in various alleged mining operations. An investor would be required to purchase ore and to grant the mining company a fifty-percent royalty in the sale proceeds. The investor also had to pay his share of the mining company's operating costs, by tendering one-sixth in cash and borrowing the remainder from NQUIR, which he was led to believe was unrelated to

the mining company. Company prospectuses described the mining operations as ongoing and fruitful, and claimed that the investments were tax shelters. Approximately 250 people invested funds totaling over $1.8 million in Christian's schemes.

Arizona authorities eventually discovered that the mining operations did not exist. Funds paid by investors to cover operating costs had in fact been funneled to Christian and his accomplices for personal expenditures, including a yacht bought by Christian. The investors' tax shelters collapsed for lack of a foundation in reality.

On January 9, 1985, an Arizona grand jury indicted Christian on four counts of criminal fraud, three counts of criminal conspiracy, and twenty-seven counts of theft. Christian, after a jury trial, was convicted on all counts. He was sentenced to thirty-one and one-half years' imprisonment. His sentence included a state law enhancement predicated upon Christian's prior federal conviction for wire fraud. The Arizona Court of Appeals affirmed Christian's conviction and sentence and found the federal conviction an appropriate basis for enhancement.

After exhausting state remedies, Christian filed a *pro se* petition for writ of habeas corpus in the U.S. District Court for the District of Arizona. The district court denied the writ. This appeal followed. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

**II.**

The district court's denial of a petition for habeas corpus is reviewed *de novo*. *Adams v. Peterson*, 968 F.2d 835, 843 (9th Cir.1992) (en banc), *cert. denied*, — U.S. —, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993). Findings of fact are reviewed for clear error. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991).

**A. Confrontation Clause**

Because Christian was serving a federal prison sentence on a conviction of wire fraud at the time of his indictment, federal and

1. Also known as Stephen Cline.

state officials arranged to relocate Christian temporarily to state facilities for trial.

Prior to trial, the prosecution moved to take videotaped depositions of five witnesses living in the Cayman Islands who were unwilling to testify at trial. The state trial court granted the motion. Four of the witnesses were officials of Cayman Island institutions. These witnesses provided the foundations for NQUIR's bank records and incorporation documents, the registration of a post office box apparently used by NQUIR, and the registration of Christian's yacht. The fifth witness, an alleged associate of Christian named Charles Stroup, identified Christian as the "head" of NQUIR.

Christian's attorney attended the depositions, which were held in the Cayman Islands, and cross-examined the witnesses. Christian himself was not present because, according to the state, the federal authorities who had "loaned" him to Arizona would not let him leave the country. The state provided Christian with a telephone link to his attorney by which the attorney could contact Christian during breaks. Neither Christian nor his attorney used this facility. At trial, the state introduced the depositions into evidence over Christian's objection.

### 1. *Christian's Absence from the Depositions*

■ Christian had the right to be present at the Cayman Islands depositions under Rule 15.3 of the Arizona Rules of Criminal Procedure. *State v. Shearer*, 158 Ariz. 89, 761 P.2d 163 (1988). The rule, which is similar to Rule 15 of the Federal Rules of Criminal Procedure, provides: "If a defendant is in custody, the officer having custody ... shall, unless the defendant waives, in writing, the right to be present, produce him at the examination...." 17 A.R.S. Rules of

Crim. Proc., Rule 15.3(d); *see also State v. Alvarado*, 158 Ariz. 89, 761 P.2d 163 (1988).

■ Christian also had a Sixth Amendment right to attend the depositions under the Confrontation Clause of the federal constitution.[2] *See Coy v. Iowa*, 487 U.S. 1012, 1015, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988).[3] The Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Id.* at 1016, 108 S.Ct. at 2801. This physical confrontation "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Maryland v. Craig*, 497 U.S. 836, 846, 110 S.Ct. 3157, 3164, 111 L.Ed.2d 666 (1990); *see also Coy*, 487 U.S. at 1019, 108 S.Ct. at 2802 ("A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.'") (quoting Z. Chafee, *The Blessings of Liberty* 35 (1956)). The Confrontation Clause thus gives the defendant the right to be present and to confront witnesses giving testimony during a pretrial deposition, where the deposition is intended for use at trial. *Don v. Nix*, 886 F.2d 203 (8th Cir.1989); *United States v. Benfield*, 593 F.2d 815 (8th Cir.1979).

Christian did not waive his right to be present at the depositions, either in writing, as required by the Arizona rules, or through his intentional, knowing, and voluntary absence. *Brewer v. Raines*, 670 F.2d 117, 118–19 (9th Cir.1982); *United States v. King*, 552 F.2d 833, 844 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Nor did Christian forfeit that right through misconduct. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970).

■ Nor does any recently crafted exception to the Confrontation Clause apply to Christian's situation. In *Craig*, 497 U.S. at

---

**2.** Christian likewise had the right to be present under the Due Process Clause of the Fourteenth Amendment. *See Thomas v. Goldsmith*, 979 F.2d 746, 748 (9th Cir.1992) (citing *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)) ("Under the due process clause, a defendant has the right to be present at any criminal proceeding in which his presence would contribute to the proceeding's fairness or reliability.").

**3.** The Confrontation Clause applies to state criminal trials through its incorporation into the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965).

850, 110 S.Ct. at 3166, the Supreme Court recognized an exception "where denial of such confrontation is necessary to further an important public policy and . . . the reliability of the testimony is otherwise assured." The exception is a narrow one. The Court upheld a state procedure in child sexual abuse cases that allowed a child witness to testify against the defendant via a one-way, closed-circuit camera. The trial court was required to make a particularized finding that "the child witness would be traumatized, not by the courtroom generally, but *by the presence of the defendant,*" before the state's interest in protecting the psychological well-being of the child could outweigh the defendant's right to a face-to-face encounter. *Id.* 497 U.S. at 856, 110 S.Ct. at 3169 (emphasis added).[4]

The state, however, directs our attention to a line of cases creating a narrow exception to the defendant's right to attend depositions taken pursuant to Federal Rule 15. The Second and Third Circuits have found no violation of the confrontation right where,

despite the efforts of the prosecution and due to no fault of the defendant, a defendant's presence was prohibited by the foreign nation in which the deposition was held. *See United States v. Kelly,* 892 F.2d 255 (3d Cir.1989), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990), and *United States v. Gifford,* 892 F.2d 263 (3d Cir. 1989), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990) (companion cases); *United States v. Salim,* 855 F.2d 944 (2d Cir.1988).[5] The state argues that Christian's case falls within this narrow exception to the right of face-to-face confrontation.[6] We disagree.

The district court found that Arizona made "no effort whatsoever" to secure Christian's presence at the depositions. The state made no showing that officials had sought permission for Christian to attend, either from the government of the Cayman Islands, where the depositions were held, or from the federal government, which had custody of Christian. The state merely asserted its conclu-

---

**4.** *See also Coy,* 487 U.S. 1012, 108 S.Ct. 2798 (absent individualized findings that the child witnesses needed special protection from confrontation with the defendant, state's use of a screen that prevented witnesses from being able to see defendant while testifying violated the defendant's confrontation rights); *Benfield,* 593 F.2d 815 (absent showing that defendant's crime was "so heinous as to excuse the victim from facing [defendant] while testifying," procedure in which defendant watched deposition in separate room via one-way, closed-circuit television and witness was unaware that defendant was observing her testimony violated defendant's confrontation rights).

**5.** In *Kelly,* the prosecution requested permission from the Belgian government to allow the defendant, who was in custody, to attend videotaped depositions in Belgium. The Belgian government refused. An open telephone line was provided so that the defendant could listen to the testimony during the deposition. A private telephone was also provided so that the defendant could confer with his attorney, who attended the depositions and conducted cross-examination. 892 F.2d at 260. The court found that the depositions satisfied the requirements for the former testimony exception to the hearsay rule, Fed. R.Evid.P. 804(b)(1), and held that their admission did not violate the Confrontation Clause. *Id.* at 262.

In *Salim,* the prosecution deposed a defendant's coconspirator, who was being held on drug charges in France. The French govern-

ment refused to permit the defendant to attend the deposition, either in person or by live telephone hookup. 855 F.2d at 947, 949–50. Nonetheless, the court held the deposition testimony admissible, reasoning:

> [W]e believe that *so long as the prosecution makes diligent efforts, as it did in this case, to attempt to secure the defendant's presence,* preferably in person, but if necessary via some form of live broadcast, the refusal of the host government to permit the defendant to be present should not preclude the district court from ordering that the witness' testimony be preserved anyway.

*Id.* at 950 (emphasis added).

**6.** Respondents also contend that this case is controlled by our decisions in *United States v. Sines,* 761 F.2d 1434 (9th Cir.1985), and *Barker v. Morris,* 761 F.2d 1396 (9th Cir.1985), *cert. denied,* 474 U.S. 1063, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). Those cases are readily distinguishable, however. In both *Sines* and *Barker,* the defendant's absence from the pretrial proceeding was of his own making, and in no way the fault of the prosecution. *Sines,* 761 F.2d at 1441 (finding that defendant's absence from depositions taken in Thailand was his own choice; he refused to attend for fear that Thai authorities would apprehend him); *Barker,* 761 F.2d at 1400 (finding that defendant's inability to attend videotaped deposition or cross-examine deponents was "directly attributable to [his] fugitive status"). Both cases are more appropriately viewed as waiver cases.

sion that the federal government would not let Christian attend, without proffering any proof or confirmation of that fact.

■ While no court has articulated a standard for the diligence required of the prosecution in attempting to secure the defendant's presence at a deposition to be used at trial, it is clear that herculean efforts are not constitutionally required. For example, we have held that the prosecution is not required to ensure "safe passage" for the defendant to prevent his apprehension by foreign authorities. *Sines*, 761 F.2d at 1440; *see also United States v. Walker*, 1 F.3d 423, 428 (6th Cir.1993) (finding government's failure to secure a formal guarantee from the Japanese government not to prosecute defendants, who refused to attend depositions in Japan as a result, did not violate Confrontation Clause).

■ It is nonetheless clear that the state must do *something* in its attempt to secure the defendant's presence.[7] We will not attempt in this opinion to lay· down a general standard for the efforts required of the prosecution in a case such as this. We are satisfied, however, on the basis of the record in this case, that the state violated Christian's confrontation rights by failing to make any attempt whatsoever to secure his presence at the Cayman Islands depositions.[8]

### 2. *Unavailability of Witnesses*

■ The district court also held that introduction of the video-taped depositions at Christian's trial violated the Confrontation Clause because the prosecution failed to show that the Cayman Islands witnesses were unavailable to testify. We disagree.

■ The Confrontation Clause "permits the introduction of out-of-court statements if they are both necessary and reliable." *Barker*, 761 F.2d at 1399. Necessity is proven by a showing that the witness is unavailable to testify at trial. *United States v. Monaco*, 735 F.2d 1173, 1175 (9th Cir.1984) (citing *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980)).

■ "A witness is not 'unavailable' [to testify at trial] unless the prosecutor makes a good faith effort to obtain the witness's presence." *United States v. Winn*, 767 F.2d 527, 530 (9th Cir.1985). The lengths to which a prosecutor must go to establish good faith is a question of reasonableness. *Id.*

The district court found that the prosecution did not make a reasonable effort to produce the witnesses for trial. In doing so it relied on precedent from other Circuits. The district court held that the prosecution *must* offer to reimburse the witnesses for their travel expenses in order to establish good faith.

. We reject this approach. "Good faith" and "reasonableness" are terms that demand fact-intensive, case-by-case analysis, not rigid rules. Here, the prosecution asked the witnesses if they would come to the United States to testify at trial; they refused. The state did not have the power to compel them to do so. The Third Circuit has held that the

---

7. *See Walker*, 1 F.3d at 428 (government "took reasonable steps to enable the appellants to attend the taking of depositions in Japan without being arrested"); *Salim*, 855 F.2d at 950 (government made "reasonable" and "diligent" efforts to allow defendant to attend deposition in France); *Kelly*, 892 F.2d at 260 (government sought permission from Belgian government to transport incarcerated defendants to depositions); *cf. Barber v. Page*, 390 U.S. 719, 723, 88 S.Ct. 1318, 1321, 20 L.Ed.2d 255 (1967) (finding a Confrontation Clause violation where "the state made absolutely no effort to obtain the presence of [the witness] at trial other than to ascertain that he was in a federal prison" outside the state).

8. The state did provide a telephone by which Christian could call his attorney, and vice-versa,

during breaks. If, contrary to the circumstances of this case, the state had attempted to allow Christian to attend the depositions, and those attempts had failed, this would present a different case. *See Sines*, 761 F.2d at 1441 (where defendant waived his right to attend deposition but could contact counsel during breaks by telephone, counsel's cross-examination of witness in defendant's absence was nonetheless sufficient to protect defendant's confrontation rights). Under our holding today, however, the state must *first* attempt to secure the defendant's actual, physical presence, before resorting to a mere telephone link to the proceedings. The state may not ignore the Confrontation Clause's "preference for face-to-face confrontation." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980).

use of depositions is a reasonable solution in such a situation. *Kelly,* 892 F.2d at 262. Under the circumstances, we also decline to demand that the state bear the significant expense of reimbursing the witnesses' travel from the Cayman Islands to Arizona. Nor is there evidence to suggest that such reimbursement would have persuaded the witnesses to undertake the journey to testify. We hold that the prosecution's efforts to secure the witnesses' presence at trial in this case were reasonable under the circumstances.

### 3. *Reliability of Witnesses' Testimony*

■ Once the witnesses' unavailability has been shown, the Confrontation Clause requires out-of-court statements to have sufficient indicia of reliability to be admissible. *Barker,* 761 F.2d at 1399; *see also Craig,* 497 U.S. at 845, 110 S.Ct. at 3163 ("[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant").

In this case, all the deposition witnesses testified under oath and penalty of perjury. *Barker,* 761 F.2d at 1401. Christian's attorney had the opportunity to cross-examine each witness, albeit unaided by his client. *Sines,* 761 F.2d at 1441. At trial, the jury had at least some opportunity to assess the witnesses' demeanor by watching the videotape. *Id.*

We find this is sufficient to satisfy the reliability requirement of the Confrontation Clause. The presence of "these elements of confrontation—oath, cross-examination, and observation of witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Craig,* 497 U.S. at 851, 110 S.Ct. at 3166; *accord Sines,* 761 F.2d at 1441.

Furthermore, the witnesses' testimony was independently corroborated by other evidence presented by the prosecution. *Barker,* 761 F.2d at 1403; *Sines,* 761 F.2d at 1441. In addition, four of the five witnesses were record custodians who apparently had no personal dealings with Christian and no motive to lie. *Cf. United States v. Bachsian,* 4 F.3d 796, 798 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 901, 127 L.Ed.2d 92 (1994) (finding shipping documents to be admissible hearsay in part because individuals who prepared documents had no motive to lie). The fifth witness, Stroup, offered only cumulative testimony.

### B. *Harmless Error*

■ We turn now to the issue of whether the violation of Christian's confrontation rights was harmless error. In the context of habeas petitions, the standard of review is whether a given error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 766, 66 S.Ct. 1239, 1248–49, 90 L.Ed. 1557 (1946)). The Supreme Court has described the review of Confrontation Clause violations thus: "An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." *Coy,* 487 U.S. at 1021–22, 108 S.Ct. at 2803.

■ The district court rightly concluded that overwhelming independent evidence supported Christian's guilt. The state called more than fifty witnesses who testified over twenty-four days. Investors in the mining programs recited misrepresentations made to them by Christian and his cohorts. The true owners of the purported mining properties, along with officials of the Bureau of Land Management, testified to the falsity of the prospectuses. Christian's signature on various mining company documents was identified by handwriting experts. Accountants traced investor funds to personal expenditures by Christian and his partners. Documents obtained from Christian's briefcase linked him to NQUIR. Prospective investors verified that Christian had attended an investment seminar in the Cayman Islands. Christian was identified as the director of the

mining programs by a coconspirator whose testimony was corroborated by several investors and other outsiders.

Christian maintains that the depositions were the "linchpin" of the state's case, arguing that the Cayman Islands evidence was the only link between him and NQUIR. We disagree. As noted above, documents found in Christian's briefcase also linked him to NQUIR. Furthermore, the other evidence at trial—testimony by investors and Christian's associates—connected Christian to the mining programs as a whole. The link to NQUIR was only one piece in the overall puzzle.

Christian also contends that, had he been present at the Cayman Islands depositions, he could have elicited exculpatory testimony from the deponents on cross-examination. This is precisely the sort of speculation that *Coy* precludes. *Coy,* 487 U.S. at 1021–22, 108 S.Ct. at 2803–04.

We find that the challenged depositions did not have a substantial or injurious impact on the verdict. The impact was only marginal at best. Therefore, we hold that the violation of Christian's confrontation rights was harmless error.

## C. *Ineffective Assistance of Counsel*

Christian's counsel did not immediately object to the deposition procedure. Instead, he reserved his objections until the state attempted to admit the depositions into evidence. Christian contends that this action constituted ineffective assistance of counsel.

■ To prove ineffective assistance of counsel, Christian must demonstrate (1) that his counsel's failure to object immediately to the depositions was "outside the wide range of professionally competent assistance," and (2) that he was prejudiced by his counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 687–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984).

9. Christian also raises a bevy of new "ineffective assistance" claims, arguing that his attorney failed properly to cross-examine witnesses who would have exculpated him. We decline to address these claims, which Christian failed to raise

■ Leaving aside the possibility that Christian's counsel merely stood by while the state fell into constitutional error, we find that Christian's contention falls with his Confrontation Clause claim. It is true that the deposition procedure did violate Christian's confrontation rights; however, because the violation was harmless error, Christian could not have been prejudiced. We therefore reject Christian's ineffective assistance of counsel claim.[9]

## D. *Sentence Enhancement*

■ Under Arizona law, a defendant's prior conviction of a federal offense may be used to enhance his punishment if "elements sufficient to amount to a state felony were included within the federal offense and were thereby necessarily proven beyond a reasonable doubt." *State v. Wilson,* 152 Ariz. 127, 129, 730 P.2d 836, 838 (1986). The Arizona trial court used Christian's federal wire fraud conviction to enhance his sentence, reasoning that the wire fraud statute, 18 U.S.C. § 1343, includes elements sufficient to support a state-law fraud conviction. Christian contests this conclusion.

■ Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief. *Bueno v. Hallahan,* 988 F.2d 86, 88 (9th Cir.1993); *see also Kemph v. Estelle,* 621 F.2d 162, 163 (5th Cir.1980) (involving substantially similar Texas sentencing law). This rule applies even when a state interprets federal law to enhance a sentence. We find no fundamental unfairness in the state's interpretation of federal law to enhance Christian's sentence. Therefore we hold that Christian is not entitled to habeas relief on this ground.

## E. *Christian's Discovery Request*

Christian also contests the district court's denial of his motion for a *subpoena duces tecum.* This issue has a fairly complex procedural history. The district court denied

before the district court. *See King v. Brown,* 8 F.3d 1403, 1410 n. 4 (9th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 311, 130 L.Ed.2d 274 (1994).

Christian's habeas petition on December 7, 1992. Christian filed a notice of appeal on December 31. On April 13, 1993, Christian moved for a *subpoena duces tecum* to compel the state to produce certain documents he deemed necessary to refute the district court's "harmless error" analysis of the Confrontation Clause issue. The district court denied Christian's motion on July 29, 1993, for lack of jurisdiction, noting that the proceedings before it had already been completed.

Due to a typographical error, Christian's original notice of appeal erroneously referred to a different district court action that was still in progress. This Court accordingly dismissed the appeal as premature. Christian informed the district court of his error and of the fact that it had not issued a certificate of probable cause to permit his appeal to proceed. He then asked the district court to reconsider its denial of his discovery motion. The district court, stating that it had reviewed the record, denied, apparently on the merits, Christian's request for reconsideration, but granted a certificate of probable cause.

### 1. *Jurisdiction*

 The state does not argue that the district court lacked jurisdiction to deny Christian's discovery request.[10] This Court must nevertheless consider, *sua sponte*, its own jurisdiction, which hinges on that of the district court. *Campbell v. Blodgett*, 982 F.2d 1356, 1357 (9th Cir.1993).

 Ordinarily, a notice of appeal divests the district court of jurisdiction "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982).[11] However, an appeal from the denial of a habeas petition cannot proceed until the district court issues or denies a certificate of probable cause. *See* Fed.R.App.P. 22(b). Therefore, the district court retained jurisdiction over Christian's habeas petition until it certified the appeal. Because the district court had not yet certified Christian's appeal, that appeal could not proceed. It follows that the district court could exercise jurisdiction over the discovery motion without intruding on an appeal in progress. Moreover, no such intrusion was possible because at the time of Christian's request for reconsideration, this Court had already dismissed Christian's appeal due to his clerical error.

### 2. *Merits*

 We find that the district court did not abuse its discretion by denying Christian's late-blooming motion.[12] Christian made his request over three months after the district court denied his petition, and over a year after a magistrate recommended that the petition be denied. Christian offered no explanation for his delay.

In addition, the magistrate and the district court had already reviewed enough of the trial record to conclude that the state had presented overwhelming evidence of Christian's guilt, independent of the Cayman Islands depositions. Many of the documents requested appear to be discovery documents or evidence used in Arizona civil proceedings. It is unclear whether much of this evidence was even adduced at Christian's trial.

Christian has also filed a motion before *this* Court to compel the district court to produce the documents he seeks. This motion is DENIED.

Denial of the writ of habeas corpus is AFFIRMED.

---

10. The state does contend that the district court's order denying Christian's discovery request was not final or appealable. We reject this argument. The district court dismissed Christian's habeas petition; its denial of the discovery motion is logically viewed as part and parcel of the final judgment.

11. This rule serves "to avoid confusion or waste of time resulting from having the same issues before the two courts at the same time." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984).

12. "The availability of any discovery during a habeas proceeding is committed to the sound discretion of the trial court." *Campbell*, 982 F.2d at 1358.