**UNITED STATES of America, Appellee,**

v.

**Mohamed SALIM, a/k/a Abdul Qazi, a/k/a Mohamed Ali, Defendant–Appellant.**

**No. 1120, Docket 87–1402.**

United States Court of Appeals, Second Circuit.

Argued May 13, 1988.

Decided Aug. 24, 1988.

Martin Geduldig, Garden City, N.Y. (Daniel J. Conroy, Garden City, N.Y., of counsel), for defendant-appellant.

Gordon Mehler, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before VAN GRAAFEILAND, PIERCE and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge:

In order to obtain evidence for use in domestic trials, litigants are apt to find it increasingly necessary to conduct depositions in foreign countries. However, foreign laws do not always permit witnesses to be deposed in the manner to which American courts and lawyers are accustomed. In certain cases, the use of unconventional foreign methods of examination may exceed the limits of accepted American standards of fairness and reliability, such as underlie the confrontation clause and the rule against hearsay. Concerns of this type are addressed best on a case-by-case basis.

This appeal requires us to determine the extent to which the deposition of a government witness, taken abroad in a manner different from that which would be required of a deposition taken in the United States, may be admitted in evidence and used against a defendant in a criminal prosecution. Mohamed Salim was convicted by a jury in the United States District Court for the Eastern District of New York on charges of conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a), 846, and of offering a bribe to an officer of the United States Customs Service, in violation of 18 U.S.C. § 201(b). In an opinion reported at 664 F.Supp. 682 (E.D.N.Y.1987), the district court, Jack B. Weinstein, *Judge*, held that a witness' deposition, taken in France pursuant to French law, was properly admitted pursuant to Fed.R.Crim.P. 15 and Fed.R. Evid. 804(b)(1), and did not violate Salim's rights under the confrontation clause of the Constitution, U.S. Const. amend. VI, cl. 4. For the reasons that follow, we agree with the district court and therefore affirm the conviction.

## BACKGROUND

In November 1986, Bebe Soraia Rouhani arrived at Orly Airport in Paris, France, en route from Karachi, Pakistan, to John F. Kennedy Airport in New York. A routine inspection by French customs officials revealed that she was carrying nine pounds of heroin in the lining of her suitcases. She told French officials that the suitcases had been given to her in Karachi and that she was supposed to deliver them at Kennedy Airport to a man named "Qazi," whose description she provided. French authorities gave this information to United States Customs agents in Paris, who relayed it to New York. Defendant Mohamed Salim was identified at Kennedy Airport by his description, and was arrested after fleeing across the lobby of the International Arrival Terminal when an undercover agent addressed him as "Qazi" and asked if he were meeting "Bebe." At the time of his arrest, Salim had in his possession a photocopy of Rouhani's passport, containing her description and photograph. While being taken from the airport to the Metropolitan Correctional Center, Salim offered a customs agent $20,000 to allow him to escape.

Prior to trial, the government sought permission from the district court to take Rouhani's deposition in France since she was being held in custody by French police while awaiting her own trial for drug smuggling. The district court concluded that Rouhani's testimony would be important to the trial of appellant, but since she was unlikely to be able to appear at his trial here to give live testimony, the court issued a Request for Judicial Assistance to the Republic of France, and arrangements were made for Rouhani to be deposed before the Honorable Evelyne Verleene–Thomas, Examining Magistrate of the trial court (Juge d'Instruction du Tribunal de Grande Instance) in Bobigny, France (the "magistrate"). Appellant was in federal custody in New York pending trial but could not be transported to France to attend the deposition because the United States Marshals Service lacked authority to keep him in custody in France. Consequently, efforts were made to have two open telephone lines available between the court in France and the courthouse in the United States to enable Salim to hear Rouhani's deposition testimony on one line and to consult privately with his attorney on the other line. Additionally, the government sought permission to record the deposition on audio or video tape. Both proposals were rejected by the French court as contrary to French law. However, the French magistrate did permit a court reporter from the court in the Eastern District of New York, who had traveled to France together with the Assistant United States Attorney and Salim's attorney, to be present and to transcribe portions of the proceedings, even though French practice required the examining magistrate to keep a written summary of her own.

On the day of the deposition, contrary to expectations, the magistrate required the American prosecutor and defense attorney to submit their questions in writing since French law only permits a judge to question witnesses. Magistrate Verleene–Thomas also informed counsel that French law prohibited appellant's attorney from being present in the room while Rouhani testified. Confronted with this situation, the Assistant United States Attorney, who would have been allowed to be present, voluntarily agreed to absent himself from the room as well in order to avoid any appearance of unfair advantage.

Over objections by defendant's counsel, the deposition then occurred in the following manner in the magistrate's chambers: the government submitted direct examination questions to the magistrate in English and French, and defense counsel submitted cross-questions in English. At the magistrate's direction, copies of the questions were provided to the witness' attorney, as apparently is required by French law. The questions were posed by the magistrate in French and translated into Farsi for Rouhani, whose responses were then translated into French and back into English and recorded by the court reporter. Upon the conclusion of this segment of the examination, the witness left the room and the English translations of Rouhani's respons-

es were read back to the attorneys by the court reporter. Defense counsel then submitted further cross-questions, and the procedure was repeated; another round of cross-examination followed thereafter, and the witness again answered the questions posed. Appellant, in the United States, was accessible by telephone during this entire period, but defense counsel made no effort to contact him.

According to the court reporter's testimony at trial, some conversations were not recorded in the transcript because they occurred in French between Rouhani and her lawyer; additionally, the transcript shows that Rouhani's lawyer made some statements in French to the magistrate that were not officially translated, but instead were summarized by the magistrate, and those summations were translated for the record. All statements that were made in or translated into English are reflected in the transcript, which, except for the absence of the conversations between Rouhani and her lawyer, appears to constitute a complete record of the proceedings.

The attorneys agreed with the magistrate to interrupt taking the deposition for one week. The American participants flew back to New York, the court reporter prepared a transcript of the first round of proceedings, and defense counsel reviewed that transcript with his client. The attorneys and the reporter thereafter returned to Paris, and a new round of cross-questioning occurred. The new portions of the proceedings were read back as before, except that this time, they were also read to the defendant by telephone with the aid of yet another interpreter in New York. After further questioning by the defense and redirect examination by the prosecutor, defense counsel again conferred by telephone with his client. Both attorneys then indicated that they had no further questions, and the taking of the deposition was concluded.

During the taking of the deposition, and in accordance with French procedure, there were a few instances in which Rouhani's attorney answered on her behalf or prevented her from answering because of her rights under French law. There were also a few instances in which, with the consent of the American attorneys, the magistrate supplemented the questions submitted by counsel with some of her own in order to elicit more complete responses from the witness. From a reading of the transcript, it is apparent that the questions submitted by the American attorneys were asked by the magistrate and answered by the witness.

At appellant's trial, various portions of the deposition transcript were read into evidence over defendant's objections. The court instructed the jury that the defendant had not been present at the taking of the deposition and the court emphatically cautioned the jurors as to the difficulty of assessing Rouhani's credibility, particularly given the absence of demeanor evidence. The court also informed them about the possible incentive of the witness to curry favor with the French court because of her own forthcoming trial. However, in order to aid the jury in determining what weight to accord the deposition testimony, Judge Weinstein permitted the reporter who transcribed the deposition to testify both as to the procedures used and as to Rouhani's distraught demeanor during the examination. Following four days of trial, the jury convicted appellant on all counts.

## DISCUSSION

The use of depositions in criminal cases is governed by Fed.R.Crim.P. 15, which permits a party in "exceptional circumstances" to depose its own witness in order to preserve the witness' testimony, particularly if that witness is likely to be unavailable to testify at trial. The district court determined that Rouhani would be unavailable to testify at Salim's trial in the United States given her imprisonment in France pending her own trial there, and that because her testimony was central to the case, "exceptional circumstances" existed sufficient to permit the government to depose her abroad. See 664 F.Supp. at 684–85. The court therefore exercised its discretion to issue letters rogatory to the French government, requesting its assist-

ance in deposing Rouhani in France. *See generally United States v. Steele*, 685 F.2d 793 (3d Cir.) (approving use of letters rogatory in connection with Fed.R.Crim.P. 15), *cert. denied*, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982).

On appeal, Salim challenges the taking and admission of the deposition testimony on various grounds, asserting in particular that the deposition (1) did not comply with Fed.R.Crim.P. 15; (2) did not meet the criteria of Fed.R.Evid. 804(b)(1) for admission of former testimony; and (3) violated the confrontation clause of the sixth amendment. We address each of these contentions in turn.

## A. *Fed.R.Crim.P. 15*

█ Appellant asserts that the deposition contravened both the requirement of Fed.R.Crim.P. 15(b) that a defendant be produced at the taking of a deposition and the limitations of Fed.R.Crim.P. 15(d) concerning the manner in which a deposition is taken. With respect to the former, although Salim was unable to be present at the taking of the deposition, and while the French magistrate did not permit him to view or listen to the testimony via simultaneous video or audio broadcast, we nevertheless conclude that the deposition did not contravene the production requirement of Rule 15(b).

In pertinent part, Rule 15(b) provides that "[t]he officer having custody of a defendant ... shall ... produce the defendant at the examination [before trial] and keep the defendant in the presence of the witness during the examination." This provision reflects an obvious concern that any deposition taken for use in connection with a criminal prosecution satisfy the requirements of the confrontation clause. Although physical confrontation of opposing witnesses is not always constitutionally required, *see Bourjaily v. United States*, — U.S. —, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), at least not for out-of-court statements, *see Coy v. Iowa*, — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), "the justification for using a deposition at a criminal trial as evidence against a

defendant is stronger" if the defendant was present at its taking or waived the right to be present. 2 C. Wright, *Federal Practice & Procedure* § 244, at 20 (2d ed. 1982).

In cases involving depositions conducted within the United States—where it is within the power of the court to require the defendant's presence and within the power of the government to arrange it—a strict application of Rule 15(b) may be required. *See, e.g., United States v. Benfield*, 593 F.2d 815 (8th Cir.1979). Indeed, the Advisory Committee notes accompanying the 1974 amendment of the rule seem to support such a view, since they indicate that "if [the defendant] is in state custody, a writ of habeas corpus ad testificandum (to produce the prisoner for purposes of testimony) may be required to accomplish his presence." However, we need not decide how strictly the rule should be applied to the taking of domestic depositions since this case presents a problem that is not present when a domestic deposition is at issue. This case involves a foreign nation that would not permit the defendant to be present, either in person or via any form of live broadcast, while the witness testified.

As indicated by its opening language, Rule 15 was designed to facilitate the preservation of testimony. *See* Fed.R.Crim.P. 15(a) (authorizing taking of deposition "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial"). As explained by the advisory notes, the rule is intended to permit parties to take depositions in certain limited classes of cases pursuant to court order so as to preserve a record of a matter. We must apply the rule to effectuate this purpose.

█ When, as here, a foreign government will not permit a defendant to observe or listen to a witness as she testifies, the district court must choose whether to permit the deposition to be taken without the defendant's presence or whether to forgo the testimony sought. We do not believe that the purpose of the rule should

be subverted by allowing the presence requirement of Rule 15(b) to become an obstacle that prevents the deposition from being taken at all. A sovereign nation is entitled to refuse to acquiesce in the use within its borders of American methods of gathering, preserving and presenting evidence; such refusal, however, should not automatically and invariably cause the prosecution to abandon its efforts to obtain evidence abroad.

■ In the context of the taking of a foreign deposition, we believe that so long as the prosecution makes diligent efforts, as it did in this case, to attempt to secure the defendant's presence, preferably in person, but if necessary via some form of live broadcast, the refusal of the host government to permit the defendant to be present should not preclude the district court from ordering that the witness' testimony be preserved anyway. However, the district court should satisfy itself that defense counsel will be given an opportunity to cross-examine the witness in order to fulfill the mandate of Rule 15(b) to ensure a likelihood that the deposition will not violate the confrontation clause. *See generally Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (opportunity for cross-examination prerequisite to satisfying confrontation clause (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam))). Whether the deposition actually will meet the requirements of the confrontation clause and ultimately will satisfy our rules of evidence so as to be admissible against the defendant are independent questions that are best addressed separately. *See* Fed.R.Crim.P. 15(e) (recognizing that Federal Rules of Evidence impose independent evidentiary limitations that should govern questions of admissibility); *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir.1984). Under the circumstances herein, since the government made reasonable efforts to produce Salim at the taking of the deposition and defense counsel conducted a lengthy cross-examination of the witness, we conclude that the government's inability to produce the defendant in France does not necessarily invalidate the deposition under Rule 15(b). We next proceed to determine whether the taking of the deposition comported with the additional requirements of Rule 15(d).

■ In subdivision (d), Rule 15 contains the instruction that "a deposition shall be taken ... in the manner provided in civil actions ..., provided that ... the scope and manner of examination and cross-examination shall be such as would be allowed in the trial itself." Under this provision, Salim contests the propriety of the Rouhani deposition, asserting that because defense counsel was not permitted to be present in the French magistrate's chambers when Rouhani testified, and because Rouhani's attorney was entitled to examine the questions before they were posed and Rouhani was able to confer with her attorney before answering the questions, the deposition was improper and defense counsel's ability to conduct cross-examination was impermissibly restricted. Despite our considerable concern about the possible abuses of foreign methods of examining witnesses, we are not persuaded by the challenges presented in this case.

Rule 15(d) begins by incorporating the manner of *taking* a deposition in a civil case. It then distinguishes the manner of *examining* a witness, and imposes some additional limitations with respect to the scope and manner of the latter. In order to review the deposition in light of Salim's challenges, the dual inquiry required by the rule dictates that we first categorize Salim's contentions to ascertain whether they relate to the manner of taking or to the manner of examination.

Restrictions on the manner in which the deposition is *taken* concern such issues as the person before whom the deposition should be taken, how the deposition should be recorded, and how transcripts should be certified and filed. *See* Fed.R.Crim.P. 15(d) advisory committee notes ("The procedure prescribed is similar to that in civil cases, Rules 28–31, Federal Rules of Civil Procedure, 28 U.S.C., Appendix."); 8 J. Moore, *Moore's Federal Practice* ¶ 15.05, at 15–40 to –41 (2d ed. 1988); *see generally* Fed.R.

Civ.P. 28–31. By contrast, the limitation on the scope and manner of *examination* concerns the permissible subject matter and form of the questions, respectively, that may be asked of the witness. This latter provision of the rule appears to require only that the examination and cross-examination be conducted by properly formulated questions in a manner reasonably calculated to elicit admissible testimony. Thus, the additional restriction on *scope* found in Rule 15(d) limits questioning to those matters permitted under Fed.R.Evid. 401, whereas the rule applicable to civil cases permits a much broader inquiry, *see* Fed.R.Civ.P. 26(b). *See* 2 C. Wright, *supra*, § 243, at 18. The restriction on the *manner* of examination limits the form of the questions, and concerns such matters as the entitlement to ask leading questions of a hostile witness, *see* Fed.R.Crim.P. 15(d)(2) advisory committee note (1974); 8 J. Moore, *supra*, ¶ 15.02[1], at 15–15 n. 11, ¶ 15.05, at 15–42 n. 9.

Salim does not assert that the scope of examination exceeded the bounds of relevance; nor does he allege that the questions were improperly phrased or that they called for hearsay responses, opinion testimony or speculation by the witness. Consequently, his challenge does not relate to the "scope and manner of examination," but instead concerns the manner in which the deposition was taken. In pursuing this inquiry, we therefore look to the rules applicable to civil cases.

Although the parties and the district court originally expected that the Rouhani deposition would be conducted in the conventional American manner, the French authorities forced it to be converted largely into what Judge Weinstein properly characterized as "a deposition based on written questions," such as would be permitted in a civil case pursuant to Fed.R.Civ.P. 31. While we recognize the difficulties of conducting cross-examination by written questions, it is clear that Civil Rule 31(a) does contemplate the submission of both direct and cross-examination questions in writing, since it provides time limits for the submission of such questions. Because the questions were presented to Rouhani in accordance with one of the methods permitted for use in a civil action, the attorneys' inability to pose the questions to the witness orally did not contravene Rule 15(d). *See United States v. Trout*, 633 F.Supp. 150 (N.D.Cal. 1985) (permitting deposition on written questions under Fed.R.Crim.P. 15); *see also* 2 C. Wright, *supra*, § 243, at 18–19.

■ Nor was it a violation of the rule for the examination to be conducted by the French magistrate. It is evident that it is not always possible to take a deposition in a foreign country in the manner that we might prefer, or even that we might require for a deposition taken domestically. Yet, that does not mean that depositions taken according to foreign law are inferior to those taken under United States law. In civil cases, applicable rules already reflect the propriety of conducting a deposition under the law of a foreign nation:

> In executing a letter rogatory the courts of other countries may be expected to follow their customary procedure for taking testimony. In many non-common-law countries the judge questions the witness, sometimes without first administering an oath, the attorneys put any supplemental questions either to the witness or through the judge, and the judge dictates a summary of the testimony, which the witness acknowledges as correct. The [rule] provides, contrary to the implications of some authority, that evidence recorded in such a fashion need not be excluded on that account.... Whether or to what degree the value or weight of the evidence may be affected by the method of taking or recording the testimony is left for determination according to the circumstances of the particular case; the testimony may indeed be so devoid of substance or probative value as to warrant its exclusion altogether.

Fed.R.Civ.P. 28 advisory committee note (1963) (citations omitted).

Since the civil rules governing the manner of *taking* depositions have been adopted for use in criminal cases, we do not consider it fatal that the questioning was

performed by a foreign judicial officer at the behest of and using questions submitted by the American attorneys. As noted, examination by a foreign judicial officer was specifically anticipated by the Advisory Committee on Civil Rule 28. Nor is the deposition invalid because counsel was not permitted to observe the witness as she testified, or because the witness was entitled to confer with her attorney before answering questions. The deposition was taken in accordance with French law; the French judicial system, while different from our own, is neither less impartial nor less interested in obtaining accurate testimony from witnesses. We therefore find, under the circumstances of this case, that the deposition did not contravene Rule 15. *See Hilton v. Guyot*, 159 U.S. 113, 205, 16 S.Ct. 139, 159, 40 L.Ed. 95 (1895) (examination of witnesses pursuant to French law insufficient basis to refuse to recognize foreign judgment).

As was demonstrated in this case, the parties and the court may not always know beforehand just what type of examination a foreign nation may permit the attorneys to conduct. The district court therefore may prefer to consider these problems after the deposition has been taken, when it can examine the transcript and the actual circumstances under which the deposition was conducted. *See United States v. Mann*, 590 F.2d 361, 366 (1st Cir.1978). This approach comports with both the purpose and language of Rule 15, which concentrates first on preservation of testimony and only thereafter focuses on admissibility. *See* Fed.R.Crim.P. 15(e) (admissibility to be examined separately under rules of evidence); *see also United States v. Keithan*, 751 F.2d at 12. We proceed next to determine whether the testimony was properly admitted into evidence.

### B. *Fed.R.Evid. 804*

■ The district court determined and Salim does not contest that Rouhani was an unavailable declarant for purposes of Fed. R.Evid. 804(a). However, Salim vigorously challenges the court's ruling that Rouhani's deposition constituted former testimony for purposes of Fed.R.Evid. 804(b)(1).

Under Rule 804(b)(1), an unavailable declarant's former testimony is admissible as an exception to the hearsay rule so long as the witness' former testimony was given "in a deposition taken in compliance with law in the course of the same ... proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." We agree with Judge Weinstein that Rouhani's testimony meets this test.

Although Salim complains that Rouhani's statements were not given under oath and that the transcript does not represent a verbatim translation and recording of all that occurred in the French magistrate's chambers, we are satisfied that her statements nevertheless qualify as "testimony given as a witness." While Rouhani was not under oath to tell the truth because French law does not permit an accused to take an oath, Rouhani nevertheless satisfied the affirmation requirement applicable to witnesses under Fed.R.Evid. 603. Under that rule, all that is required of a witness is an "affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to [testify truthfully]." The French judge took pains to impress upon Rouhani the need to answer truthfully, and the witness promised that she would do so. That is essentially all that Rule 603 requires. *See United States v. Badalamenti*, No. 84 Cr. 236 (PNL) (S.D.N.Y. Nov. 8, 1985) [available on WESTLAW, 1985 WL 3844] (admitting testimony given in civil law country where oath could not be administered to witness). Moreover, it is noteworthy that the rule governing depositions taken pursuant to letters rogatory which, as discussed above, applies in criminal as well as civil cases, specifies that "[e]vidence obtained in response to a letter rogatory need not be excluded merely for the reason ... that the testimony was not taken under oath." Fed.R.Civ.P. 28(b).

Furthermore, the interpreters who translated between English, French and Farsi were certified experts of the French court, sworn pursuant to French law to aid in the

administration of justice. Although French legal custom apparently permits court interpreters to summarize or rephrase testimony as they translate, "[e]vidence obtained in response to a letter rogatory need not be excluded merely for the reason that it is not a verbatim transcript," Fed.R. Civ.P. 28(b). In any event, both of the interpreters in this case represented to the French judge on the record that they were making verbatim translations, thereby satisfying Fed.R.Evid. 604. Consequently, the transcript of the deposition reflects "[t]estimony given [by Rouhani] as a witness" for purposes of Fed.R.Evid. 804(b)(1).

■ We are also satisfied that the deposition was taken "in compliance with law," as required by Rule 804(b)(1). The "law" to which this provision refers is the law governing the taking of depositions: in this case, Fed.R.Crim.P. 15, and by incorporation, Fed.R.Civ.P. 28 and 31. Rule 28, as noted earlier, was specifically designed to permit depositions to be taken in the manner provided by the law of the foreign country in which the deposition is conducted, *see* Fed.R.Civ.P. 28 advisory committee note (1963) ("courts of other countries may be expected to follow their customary procedure for taking testimony"), and the drafters evidently contemplated the particular type of deposition that occurred in this case, *see id.* Thus, a deposition taken abroad pursuant to foreign law, but in conformity with Rule 28, would appear to be taken "in compliance with law" for purposes of the former testimony exception to the rule against hearsay, Fed.R.Evid. 804(b)(1).

■ Moreover, this approach is consistent with principles of comity in international relations, which instruct us "to demonstrate due respect ... for any sovereign interest expressed by a foreign state," *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court, S.D. Iowa,* — U.S. —, 107 S.Ct. 2542, 2557, 96 L.Ed.2d 461 (1987), so long as that interest is compatible with our own sovereign interests, *see id.,* 107 S.Ct. at 2555 nn. 27–28. In order to take Rouhani's deposition, the American court actively sought the aid of the French government and invoked the mechanisms provided by the French judiciary for the taking of testimony. We therefore must be willing to acquiesce in the insistence of the French court that French law be applied to the taking of the Rouhani deposition unless the application of such law is incompatible with those essential elements of our law that represent our "sovereign interests" and that cannot yield to foreign law. In short, unless the manner of examination required by the law of the host nation is so incompatible with our fundamental principles of fairness or so prone to inaccuracy or bias as to render the testimony inherently unreliable (or, in the words of the advisory notes to Rule 28, are "so devoid of substance or probative value as to warrant its exclusion altogether"), a deposition taken pursuant to letter rogatory in accordance with the law of the host nation is taken "in compliance with law" for purposes of Rule 804(b)(1). *See generally Restatement (Third) of the Foreign Relations Law of the United States* § 482 (1987) (similar principles govern enforcement of foreign judgments); *accord Hilton v. Guyot,* 159 U.S. at 202, 16 S.Ct. at 158; *Ackermann v. Levine,* 788 F.2d 830, 841–42 (2d Cir.1986). We do not find the Rouhani deposition to be so lacking in probative value or so inherently unreliable as to require its exclusion.

■ Rule 804(b)(1) also requires as a prerequisite to admitting former testimony that the party against whom the testimony is offered have had the opportunity to examine or cross-examine the declarant at the time the out-of-court statement was made. We reject Salim's assertion that his attorney did not have an adequate opportunity to cross-examine Rouhani at her deposition because he could not view the witness' demeanor and could not develop a spontaneous line of inquiry. Although defense counsel's task was undoubtedly made more difficult by the need to submit questions in writing, the cross-examination was not thereby rendered ineffective. A criminal defendant is entitled to "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever

way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original) (quoted with approval in *Delaware v. Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435). That opportunity "is generally satisfied when the defense is given a full and fair opportunity to probe and expose [the] infirmities [of testimony] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. at 22, 106 S.Ct. at 296. In this case, "[c]ounsel's questioning clearly partook of cross-examination as a matter of *form*. His presentation was replete with leading questions, the principal tool and hallmark of cross-examination. In addition, counsel's questioning comported with the principal *purpose* of cross-examination: to challenge whether the declarant was sincerely telling what [she] believed to be the truth, whether the declarant accurately perceived and remembered the matter [she] related, and whether the declarant's intended meaning is adequately conveyed by the language [she] employed." *Ohio v. Roberts*, 448 U.S. 56, 70–71, 100 S.Ct. 2531, 2541, 65 L.Ed.2d 597 (1980) (footnote and quotation omitted; emphasis in original).

The lack of spontaneity inherent in a deposition on written questions, where the attorney cannot ask immediate follow-up questions, was adequately compensated for in this case by the ample opportunity to pose new questions to the witness after reviewing her responses to the earlier ones. The veracity of her responses can be discerned in part from the transcript itself and from the American court reporter's comments about the witness' demeanor. Additionally, although defense counsel chose not to consult with his client during the first round of examination, Salim could have been contacted very readily by telephone had it been necessary for his attorney to discuss some aspect of Rouhani's testimony before proceeding with further cross-examination. Indeed, the one-week interval between the beginning and the conclusion of the deposition enabled counsel to analyze the transcript line by line personally with Salim to search for misstatements or inaccuracies that could be brought out upon counsel's return to France and during the next round of cross-examination. And on the last day of the taking of the deposition, counsel did in fact telephone Salim to discuss Rouhani's testimony before the deposition was concluded. These opportunities were sufficient to compensate both for the defendant's physical absence and for the disadvantages of conducting the deposition in the manner required by the French court.

In short, the record shows that despite the obstacles imposed by the French court and despite the need to conduct the deposition in a disadvantageous manner, counsel was accorded what was essentially a full and fair opportunity to cross-examine the witness to ensure that she was telling the truth. Under these circumstances, the deposition transcript was admissible under Rule 804(b)(1) because it "bore sufficient 'indicia of reliability' and afforded ' "the trier of fact a satisfactory basis for evaluating the truth of the prior statement." ' " *Ohio v. Roberts*, 448 U.S. at 73, 100 S.Ct. at 2542–43 (quoting *Mancusi v. Stubbs*, 408 U.S. 204, 216, 92 S.Ct. 2308, 2315, 33 L.Ed. 2d 293 (1972)).

### C. *Confrontation Clause*

 Having determined that the deposition satisfied the requirements of Fed.R. Evid. 804(b)(1) with respect to the admission of former testimony, we address Salim's assertion that he was denied his rights under the sixth amendment's confrontation clause. When a hearsay declarant is unavailable to testify at trial and to be subject to cross-examination before the trier of fact, her statement satisfies the confrontation clause when "it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539; *see Bourjaily v. United States*, 107 S.Ct. at 2782.

The former testimony exception to the rule against hearsay is one of the most

firmly rooted, *see Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (discussing history of exception), and statements that are admitted pursuant to that exception commonly have been found to satisfy the confrontation clause, *see, e.g., Ohio v. Roberts,* 448 U.S. at 68–73, 100 S.Ct. at 2540–42; *Mancusi v. Stubbs,* 408 U.S. at 213–16, 92 S.Ct. at 2313–15; *California v. Green,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970). Because, as discussed, we agree that the deposition herein was properly found to constitute former testimony, Supreme Court case law instructs us that Rouhani's deposition therefore should satisfy the confrontation clause automatically. *See Bourjaily,* 107 S.Ct. at 2783; *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Moreover, the circumstances surrounding the taking of the deposition in this case are illustrative of the classic "indicia of reliability" that allay a court's concerns about the physical absence of a hearsay declarant: the deposition was given in a judicial setting before a judge who had power to sanction the witness; the witness was under an affirmation to tell the truth and was subject to cross-examination; and the testimony was corroborated on certain points by other evidence introduced at the defendant's trial. We therefore reject the argument that the use of the deposition at Salim's trial violated his constitutional right to confront witnesses.

 Defense counsel also objected to the French magistrate's limitation of a few cross-questions that he intended to pose to Rouhani. However, reasonable restrictions on the right of cross-examination, whether imposed by a district judge at trial or by a foreign judge during the course of the taking of a deposition, do not rise to the level of a constitutional violation if they are designed to minimize repetition or likelihood of confusion. *Delaware v. Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. Our examination of the deposition transcript reveals that defense counsel's cross-examination was not materially restricted. The transcript shows that the restrictions imposed by the French magistrate were intended to keep the questioning focused on relevant matters, to avoid badgering the witness with repetitious questions, and to protect the witness' rights as an accused under French law.

 In sum, we do not discern any constitutional infirmity in the admission of Rouhani's deposition. Before former testimony is introduced into evidence, the Constitution requires that there be "adequate indicia of reliability to justify its placement before the jury, even though there is no contemporaneous confrontation of the declarant." *United States ex rel. Haywood v. Wolff,* 658 F.2d 455, 463 (7th Cir.) (per curiam) (citing cases), *cert. denied,* 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (1981). Although Rouhani failed to answer some questions, and although her lawyer responded to a few others on Rouhani's behalf, those flaws did not render the testimony inherently unreliable. Rather, they affected the weight to be accorded to the witness' answers, which was a question for the trier of fact. The jury was adequately instructed about its responsibility to determine what weight to give to the deposition testimony, particularly since Rouhani was not present in court to be observed as she testified, and it nevertheless voted to convict the defendant. We find no basis to set aside that decision.

We have considered all of Salim's challenges to the deposition and have found them without merit. We also reject his argument that there was insufficient evidence of a conspiracy occurring in the Eastern District of New York. The judgment of the district court is affirmed.