In re **LETTER OF REQUEST FROM the GOVERNMENT OF FRANCE.**

No. M 19–70 (KC).

United States District Court, S.D. New York.

Nov. 15, 1991.

Seth Farber, Asst. U.S. Atty., New York City, for plaintiff.

Steven Skulnik, Pavia & Harcourt, Andrew D. Kaizer, Stillman Friedman & Shaw, New York City, for defendant.

## MEMORANDUM ORDER

CONBOY, District Judge:

On October 16, 1991 the Government sought an order appointing an Assistant United States Attorney as Commissioner, pursuant to 28 U.S.C. § 1782, to take necessary steps, including issuance of subpoenas to appear and produce documents and physical evidence pursuant to Fed. R.Crim.P. 17(c), and to obtain testimony and other evidence, and to submit all such evidence thereby obtained to the Government of France, in accordance with the formal request of the French nation.

We then examined the requesting papers of France, submitted by a *juge d'instruction* of the Court of Higher Instance of Paris. The documentation presented by the *juge d'instruction* is extensive, being approximately fifty pages in length, and contains accounts of court proceedings, evidence of crimes that would constitute common law felonies if committed in an American jurisdiction and indicates that the Central Bureau of Criminal Investigation in Paris is in the process of gathering evidence in response to a complaint already filed with the Senior *juge d'instruction.* Numerous court orders have already issued in the matter. An international rogatory commission concerning this matter has already been executed in Belgium. The police are proceeding with the furnishing of reports to the supervising *judge.*

Based upon the aforesaid comprehensive documentation, we concluded that the judicial proceedings implicated here constitute a proceeding in a "foreign or international tribunal" within the meaning of the statute, and that they are adjudicatory and presently underway. On October 18, 1991 we appointed the Assistant United States Attorney as Commissioner to act on behalf of the Government of France and ordered the record sealed because disclosure of the *juge d'instruction's* detailed and factual submission would injure, perhaps fatally, the French Court's criminal investigation, and thereby defeat the purpose of the statute.

Pursuant to our October 18, 1991 Order, the Commissioner issued a subpoena dated October 21, 1991 to Benjamin Lignel, son of Jean–Charles Lignel, the latter being, according to the Commissioner, the target of the French Court's criminal investigation. Counsel for Benjamin Lignel then sought a conference with the Court, and we, at the conference, suggested that the Commissioner consult with the French authorities to determine if they objected to the presence of Benjamin Lignel's counsel during the examination of his client. Counsel for Jean–Charles Lignel was also present at the conference, and asserted that the order appointing the Commissioner should be vacated upon the ground that the proceedings were a police and not a judicial matter, that the sealed submissions of the French Court should be disclosed to allow an attack by Jean–Charles Lignel upon our order, and that if the Commission was to go forward, Jean–Charles Lignel demanded notice of any examinations and the right to attend with counsel and cross-examine.

On November 7, 1991 the Commissioner submitted to the Court a facsimile transmission from French authorities consenting to our suggestion that Benjamin Lignel's attorney be present during his examination, but objecting to the presence of any other individual.

The Commissioner strenuously objects to any disclosure of the sealed papers herein to the target Jean–Charles Lignel, to any access of the target Jean–Charles Lignel to the Commissioner's examinations, and to the vacating of our order appointing the Commissioner.

The Court has before it written papers from the Commissioner and counsel for the target Jean–Charles Lignel, and heard oral argument on the matter on November 8, 1991.

■ The parties dispute the teaching of three cases decided by the Court of Appeals for this Circuit, and the application of these cases to the case at hand. *In the Matter of Letters Rogatory Issued By the Director of Inspection of the Government of India,* 385 F.2d 1017 (2d Cir.1967), was a case involving letters rogatory from an Indian Tax assessor who indisputably had no connection, formal or otherwise, with the Indian judicial system. The Court reversed a finding by the District Court that the tax officer's "inquiry" "was a proceeding in a foreign or international tribunal," 385 F.2d at 1019. Judge Friendly explicitly found, however, that the controlling statute herein, 28 U.S.C. § 1782, was intended by Congress to embrace the proceedings of investigating magistrates in foreign countries. The Judge then used as a paradigm of that legislative purpose the office of French *juges d'instruction,* whose investigations were only dubiously within the predecessor statute. Judge Friendly stated at 1020:

> The *juge d'instruction* occupies a place in the French legal system somewhat parallel to that of the grand jury in the Anglo–American system, in that it is he who decides whether the evidence against a person accused of a major crime is sufficient to require him to stand trial. The *juge d'instruction* usually enters the case at the request of the *procureur,* the counterpart of the district attorney, but he may also be seized of the case by the complaint of the *partie civile,* the injured party, although in the latter case intervention of the *procureur* must be obtained. Once seized of the case, the *juge* assumes a more active role than a grand jury would. He is in charge of the investigation though he delegates the detective work to the police. It is he rather than the *procureur* who questions the witnesses, and except when the accused is being interrogated, none of the parties may even be present at the examination. But the extent of the participation of the *juge* in the investigation—greater than that of the *procureur* or the *partie civile,* and of course greater than the grand jury's—does not mean that he has an institutional interest in a particular result. "The *juge d'instruction* represents neither the interest of the police nor that of the state prosecutors * * *." Anton, L'Instruction Criminelle, 9 Am.J.Comp.L. 441, 443 (1960). On the contrary, the prosecution is represented before the *juge d'instruction* by the *procureur* to the same, though by American standards small, extent that the accused is by his counsel. The *juge* does not have the interest in obtaining the conviction of the accused that he would have if his office were an arm of the prosecution albeit one which was adjured to act impartially. Rather, "his aim is simply to ensure that justice is done." Anton, loc. cit. supra.

The Court then went on to compare the purely administrative and civil character of the Indian tax assessor with the legal and judicial functions of the French *juges d'instruction,* and found the former, in sharp contrast to the latter, outside the entitlement created by the statute.

The movant here does not challenge Judge Friendly's description and functional analysis of the *juge d'instruction* as a legal officer who conducts judicial proceedings on behalf of the French nation, and who is independent of the police, although "he [or she] delegates the detective work to the police." *Id.*

In *Fonseca v. Blumenthal*, 620 F.2d 322 (2d Cir.1980), our Circuit had a further occasion to favorably compare French *juges d'instruction* and their requests under the statute for American judicial assistance, with the administrative and executive functions of a currency control official in Colombia, who sought assistance under the statute. The Court again reversed a district court order, and concluded that the "essence of the [Columbian official's] responsibility is the direction of a law enforcement agency. Unlike the *juge*, he has what Judge Friendly referred to in *India* as 'an institutional interest in a particular result' [citation omitted]. This interest is inconsistent with the concept of impartial adjudication intended by the term 'tribunal,' " 620 F.2d at 324. The hallmark of an objective, impartial, and juridical "tribunal" under the statute remained, explicitly, the French *juge d'instruction* and his or her proceedings on behalf of the French judiciary.

In *In re Request for International Judicial Assistance (Letter Rogatory) For the Federative Republic of Brazil*, 936 F.2d 702 (2d Cir.1991), the Court of Appeals considered "the issue of whether and under what circumstances Congress has authorized a district court to order production of evidence pursuant to a foreign government's letter rogatory *in advance of the commencement* of an adjudicative proceeding" (emphasis added), and concluded that "evidence may be produced pursuant to a letter rogatory in the absence of a pending adjudicative proceeding, but only if such a proceeding is imminent, *i.e.*, very likely to occur within a brief interval from the request," at 703. Unlike the *juge d'instruction*, described so eloquently by Judge Friendly as an established and essential institutional organ of French justice, and which, Judge Friendly found, had explicitly stimulated Congress to amend the statute to facilitate American assistance to *juges*, the Court in *In re Request of Brazil*, found that, on the record before it, the Brazilian Judge had submitted the request as a passive instrument of the Brazilian police, and that adjudicatory proceedings were not imminent. The Court did, however, reiterate the finding of Judge Friendly that judicial assistance is "available for those *preliminary* inquiries conducted in France by a *juge d'instruction*" (emphasis added) at 705. In the Brazilian case, it was undisputed that the police had sought the assistance of the judge to secure evidence for their investigation. Here, it is clear that the *juge* has delegated to the police, as Judge Friendly described, the responsibility for the detective work. Indeed, the movant has submitted a declaration from French counsel that under French law and practice the taking of the deposition by the Commission of the witness Benjamin Lignel will obviate the need for the *Juge* to produce Benjamin Lignel personally before the *Juge*. Furthermore, the declaration announces that there *is* a criminal proceeding involving Jean Charles Lignel. Hence, as a formal and factual matter, the Commissioner is acting for and on behalf of the *Juge*, and not the French police.

Finally, we cannot believe that our Circuit in *In re Brazil* intended to preclude the French *juges* from the use of the statute in seeking to determine whether a criminal charge shall be filed, when the imminence of the filing of a charge cannot be assessed in advance, precisely because of the historic even-handedness and independence of the *juges d'instruction*. Accordingly, we reiterate our finding, that a proceeding before and on behalf of a French *juge d'instruction* is adjudicatory in nature, and is in the present case, underway. The imminence or likelihood of a formal criminal charge is therefore irrelevant. We find ourselves *in medias res*, with a formal, ongoing, adjudicatory, judicial proceeding in France, and are obligated to give effect to the statute.

■ We decline to give Jean–Charles Lignel any notice or access to the Commissioner's examinations. The procedure requested by the French authorities is fully consistent with French law, which permits neither the target of a criminal investigation nor his attorney to observe or listen to a witness as the witness testifies. *See United States v. Salim*, 855 F.2d 944 (2d Cir.1988). As noted above, Judge Friendly

analogized the proceedings before a *juge d'instruction* to American grand jury proceedings, and we believe that in the circumstances of the case before us, secrecy of the Commissioner's inquiry is essential to protect the French Court's criminal investigation and honor the clear, remedial purposes of the statute in furtherance of our nation's international obligations. To allow otherwise would create grave risk that evidence would be concealed or destroyed, and French justice defeated.

Jean–Charles Lignel offers no substantial reasons for this Court to decline to authorize the requested procedures. He suggests that the fact that evidence taken outside his presence may ultimately be admitted against him at a future trial in France may offend the due process clause of the United States Constitution. Motion at 11 n. 3. This suggestion fails to accord proper respect to the fairness and adequacy of French criminal procedures. As the Second Circuit has noted, "the French judicial system, while different from our own, is neither less impartial nor less interested in obtaining accurate testimony from witnesses." *United States v. Salim* at 952. Moreover, Jean Charles Lignel's concerns about a hypothetical future foreign proceeding invite an inquiry that goes beyond this Court's narrow role in determining whether to appoint a Commissioner to collect evidence. The Commissioner is a mere conduit for evidence, with no role in the actual prosecution of the target. *Young v. United States,* No. 87 Civ. 8307 (JFK), 1988 WL 131302 (S.D.N.Y.1988), *aff'd,* 882 F.2d 633 (2d Cir.1989).

■ Absent a showing that a requesting country is manipulating section 1782 in a manner offensive to concepts of fundamental due process and fairness, United States Courts are not to embark upon the task of deciding the propriety of the ultimate uses of evidence gathered under the Section. *See In re Request for Judicial Assistance From the Seoul District Criminal Court,* 555 F.2d 720, 724 (9th Cir.1977).

Though we expressly decline to decide the question of whether Jean–Charles Lignel has standing to bring this motion, we observe that his counsel has not made an adequate showing on the point.

The motion of Jean Charles Lignel is, accordingly, in all respects denied. We hereby modify our October 18, 1991 order to authorize the presence of Benjamin Lignel's counsel during his client's examination, and exclude all other persons from that and subsequent examinations, excepting of course, the Commissioner and his staff, and the subpoenaed witness.

Because time is of the essence to the French Court, and since we can see no merit whatever in the movant's position and motion, we decline to stay our order.

SO ORDERED.